UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 07-20389-TLM |
| DAVID ALLEN and ) | |
| INGRID ALLEN, ) | |
| ) | Chapter 13 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| DAVID ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 09-07013-TLM |
| ) | |
| SUNTRUST MORTGAGE, ) | |
| SUNTRUST BANK, PANHANDLE ) | |
| STATE BANK, and CHRIS DOES ) | |
| 1-100, ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION ON
TEMPORARY RESTRAINING ORDER**
_____

**INTRODUCTION AND PROCEDURAL BACKGROUND**

On March 3, 2009, David and Ingrid Allen ("Debtors") filed a complaint commencing this adversary proceeding. Brought against SunTrust Mortgage, Inc., Suntrust Bank, Panhandle State Bank and others (collectively "Defendants"), it seeks a determination of the parties' interests in certain real property at 1596 East

MEMORANDUM OF DECISION - 1

Shingle Mill Road in Sandpoint, Idaho. It also seeks to eliminate the rights of SunTrust Mortgage, Inc. and Suntrust Bank as secured creditors in that property. Adv. Doc. No. 1.

On the same day, Debtors filed an "Emergency Petition for Injunction," seeking a temporary restraining order. *See* Adv. Doc. No. 2. ("Emergency Petition"). Debtors' Emergency Petition alleged a foreclosure sale was scheduled by Defendants for March 4, 2009, which Plaintiffs wanted enjoined. On March 4, the Court denied that petition. *See* Adv. Doc. No. 6 (Summary Order, noting lack of compliance with under Fed. R. Civ. P. 65(b)(1), incorporated by Fed. R. Bankr. P. 7065).

On March 6, Plaintiffs filed another "Emergency Petition for Injunction" and an affidavit in support. Adv. Doc. Nos. 8, 9. In these pleadings, Debtors indicated that the sale had been continued and was now set for March 10, 2009 at 11:00 a.m., and they sought to stop such sale. *See* Doc. No. 8 at ¶ 5.

The Court granted a temporary restraining order on these submissions, and set a hearing for on March 18, 2009, to consider whether a preliminary injunction should issue or the temporary restraining order should be dissolved. *See* Adv. Doc. No. 11.

Debtors filed submissions in support of a preliminary injunction, *see* Adv. Doc. Nos. 13, 14. Debtors also filed in this adversary proceeding materials in

MEMORANDUM OF DECISION - 2

support of a "motion for disqualification" of the below-signed judge.  Adv. Doc. No. 15.[1]

SunTrust Mortgage, Inc. and Suntrust Bank (sometimes collectively referred to as "the SunTrust creditors") filed a motion to dissolve the temporary restraining order.  Adv. Doc. No. 17.  A hearing on that motion, and on Debtors' request for injunctive relief, was held on March 18, 2009.  The issues were taken under advisement.

This Decision constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052, 9014.  The Court concludes that the motion of SunTrust Mortgage, Inc. and Suntrust Bank shall be granted, and the temporary restraining order dissolved.  A separate order will be entered by the Court.  Fed. R. Bankr. P. 9021.

**FACTS**

Debtors' present adversary proceeding brought against the SunTrust creditors is a continuation of litigation efforts they have undertaken in their chapter 13 case and against other creditors in a related adversary proceeding.  The Court laid out at significant length the relevant facts in its decision on the motion for

---

[1] No motion for disqualification was ever filed in this adversary proceeding.  But such motions were filed in Debtors' chapter 13 case, Case No. 07-20389-TLM, and in another adversary proceeding, Adv. No. 08-07014-TLM, and it was clear that Debtors felt the motion applied to the instant adversary proceeding as well.  The Court has issued decisions in the main case and both adversary proceedings denying the motion for disqualification.  In the present case, that decision is Adv. Doc. No. 23.

MEMORANDUM OF DECISION - 3

disqualification. *See* Adv. Doc. 23.

Those facts include, among other things, the events that transpired in Debtors' chapter 13 case, starting with Debtors' scheduling of their ownership of the subject real property and another parcel; their acknowledgment of the secured claims against such property; their attempts at confirming a chapter 13 plan under which they would control the disposition of such property; the negotiations with creditors – including direct negotiation of the treatment of the claims of the SunTrust creditors – that led to the confirmation of a chapter 13 plan, and the entry of an order of confirmation endorsed by counsel for the SunTrust creditors, Debtors' counsel, and Debtors personally; the post-confirmation default and exercise by creditors of the agreed remedy of stay relief; and Debtors' discharge of their counsel and initiation of a series of *pro se* efforts to reverse course and obtain rulings that denied the existence of any secured claims at all.

The Court incorporates here by reference, as if restated in full, all the factual findings and discussion in that Decision, Adv. Doc. No. 23, and the same constitute the Court's factual findings in connection with the instant motions in this adversary proceeding.

In addition, the Court notes that counsel for SunTrust Mortgage, Inc. and Suntrust Bank appeared and made arguments at the March 18 hearing, based on the pleading record in this adversary proceeding and in the chapter 13 case, No.

MEMORANDUM OF DECISION - 4

07-20389-TLM. Debtors also appeared at such hearing, *pro se*, and made argument, and their Exhibits 1 and 2 were admitted at the hearing.

Upon this factual and procedural record, the Court turns to the legal issues.

## DISCUSSION AND DISPOSITION

The temporary restraining order, Adv. Doc. No. 11, enjoined continuation of the deed of trust foreclosure sale that the parties agree was set to occur on March 10, 2009. The Court indicated at the March 18 hearing that the sale would remain enjoined until the entry of a ruling either dissolving that restraint or continuing it in effect. Today's decision dissolves the temporary restraining order.

### A. Injunctive Relief

Injunctive relief is subject to Rule 65 of the Federal Rules of Civil Procedure, made applicable in this Court by Federal Rule of Bankruptcy Procedure 7065.

There are two alternative standards for issuance of preliminary injunction, both of which are well established. Under the traditional test, the moving party must demonstrate (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). *Global Horizons, Inc. v. United States Dept. of Labor*, 510 F.3d 1054, 1057 (9th Cir. 2007) (citation omitted). "Alternatively, a court

MEMORANDUM OF DECISION - 5

may issue a preliminary injunction if the moving party demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* (citing *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995) (citations, emphasis, and internal quotation marks omitted); *see also Richardson v. Runge Fin. Co. (In re Richardson)*, 03.4 I.B.C.R. 216, 219, 2003 WL 22670823, at *6 (Bankr. D. Idaho 2003).[2]

However, as the Ninth Circuit recently clarified, if the moving party initially fails to demonstrate at least some chance of success on the merits, the court need not engage in the balance-of-hardship analysis:

> We have described the relationship between success on the merits and irreparable harm as "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *To reach this sliding scale analysis, however, a moving party must, at an "irreducible minimum," demonstrate some chance of success on the merits. When, as here, a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary.*

*Global Horizons,* 510 F.3d at 1057-58 (emphasis added; internal citations omitted).

As discussed below, Debtors have failed to carry their initial burden of

---

[2] These usual and accepted standards also apply to stays against non-debtors under § 105(a) of the Code. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).

MEMORANDUM OF DECISION - 6

demonstrating some chance of success on the merits. For that reason Debtors' request for injunctive relief should be, and will be, denied. *Id.*

### B. Debtors demonstrate no likelihood of success on the merits

Debtors generally contend that several secured creditors claiming liens on the Debtors' real property – including Defendant – are not in fact secured creditors and, indeed, not creditors at all.[3] Further, Debtors argue that there are flaws in the fashion that Defendants' counsel, Mr. Boyce, has appeared and/or represented those creditors. Debtors argue such flaws give rise to fatal defects in the ability of Defendants to advance any secured claims against Debtors and the properties and, even, constitute a perpetration of "fraud" on the Court.

Preliminarily, and with due deference to the *pro se* nature of Debtors' arguments, their contentions regarding Generally Accepted Accounting Principles (GAAP), the Uniform Commercial Code, Federal Reserve publications, etc., are confused, illogical, misguided and in several regards simply wrong. Debtors have not demonstrated any chance of succeeding on the merits of these theories.

More importantly, however, Debtors are barred from asserting such arguments based upon the judicial estoppel doctrine, the *res judicata* doctrine, and

---

[3] This contention is aimed at Defendants in the instant adversary proceeding, and also against the parties represented by attorney Catherine Dullea in Adv. No. 08-07014-TLM, as discussed in the prior Decision, Adv. Doc. No. 23.

MEMORANDUM OF DECISION - 7

related principles.

### 1. Judicial estoppel

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The key purpose of the doctrine is to "protect the integrity of the judicial process," but the contours of the doctrine have not been sharply defined. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). As the Supreme Court explained, "The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750.

Nevertheless, the Supreme Court has laid out three factors that "typically inform the decision whether to apply the doctrine" including: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether a party succeeded in persuading the court to accept the earlier position; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (citations omitted).

Although the Court is not required to rigidly apply these factors, each

supports estoppel here.

First, Debtors have taken clearly inconsistent positions regarding SunTrust Mortgage and Suntrust Bank. In the schedules and statements that they swore were true and correct under penalty of perjury, Debtors acknowledged that these entities were creditors and that their interests were secured by the Shingle Mill Road property. These assertions – which may be treated as evidentiary admissions under Fed. R. Evid. 801(d)[4] – were reasserted and repeated in Debtors' proposed chapter 13 plans and, ultimately, in the agreed form of confirmation order that counsel and Debtors personally signed.

Now, directly contradicting their earlier statements that treated these creditors as validly secured, Debtors contend that the SunTrust creditors are owed nothing, and that they have no creditor claim and no valid security interest in the Shingle Mill Road property.[5] The inconsistent-positions prong is thus established.

Second, Debtors' initial assertions regarding the Shingle Mill Road secured creditors were accepted and adopted when the parties presented and the Court entered the order confirming the chapter 13 plan. *See Hay v. First Interstate Bank*, 978 F.2d 555, 557 (9th Cir. 1992) (bankruptcy court may accept debtors'

---

[4] *See Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 444 n.32 (Bankr. D. Idaho).

[5] These new assertions are made in this adversary litigation, and in the objections to the proofs of claim Mr. Boyce filed for his clients, and in the motions to modify the confirmed plan and to somehow amend or modify the bankruptcy filing itself.

MEMORANDUM OF DECISION - 9

assertions by confirming a plan); *cf. Hamilton,* 270 F.3d at 784 (discharge of debt in a chapter 7 case, where debtors failed to disclose the existence of an asset, was sufficient acceptance to provide a basis for judicial estoppel of debtors' later efforts to pursue such asset).

Third, Debtors will obtain an unfair advantage if they are not estopped from attacking the validity of these secured claims. Debtors gained the benefit of the automatic stay of § 362(a), stopping the SunTrust creditors holding interests in the Shingle Mill Road property (and other creditors on the other parcel) from pursuing foreclosure and their state law legal remedies. Debtors also confirmed a chapter 13 plan that provided for a period of time in which Debtors could sell the Trapper Creek property, rather than having it foreclosed upon, in order to leverage its value and clear not just the secured debt on that property but other creditors in the case as well. The stay as to these creditors and properties lasted well over a year, from the August 2007 petition, until the October 2008 orders lifting the stay.

Further, Mr. Boyce argues, and the record supports, that the treatment of his clients here was a result of actual, extensive negotiations he had with Debtors' lawyer, and his clients' objections to confirmation were finally withdrawn only when a final series of amendments was included in the order of confirmation – an

MEMORANDUM OF DECISION - 10

order that he, Ms. Grewal, and Debtors personally, all endorsed.[6]

Under these circumstances, Debtors are judicially estopped from advancing their new theories contesting the validity of the secured claims against the Shingle Mill Road property. This doctrine barring an untimely and unfair change in legal strategy has been previously recognized and applied by this Court. *See In re JZ, LLC*, 357 B.R. 816, 824, 06.4 I.B.C.R. 110, 113 (Bankr. D. Idaho 2006), *aff'd* 371 B.R. 412 (9th Cir. BAP 2007); *In re Pich*, 253 B.R. 562, 00.4 I.B.C.R. 183 (Bankr. D. Idaho 2000). For example, in *Pich*, this Court estopped a debtor from claiming a homestead exemption in a property because the debtor had previously represented that no residential use of that property was intended. 253 B.R. at 569. *Accord In re Moore*, 269 B.R. 864, 869-70, 01.4 I.B.C.R. 147, 149 (Bankr. D. Idaho 2001) (sustaining objection to claimed homestead exemption based on debtor's inconsistent positions regarding her place of residence).

Similarly, in *Hamilton v. State Farm Fire & Casualty Co.*, the Ninth Circuit held that a debtor who failed to list his claims against State Farm as assets on his bankruptcy schedules, was judicially estopped from later suing State Farm on the same claims. 270 F.3d at 784. The court explained, "we must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he

---

[6] This fact goes to the unfair advantage prong of the judicial estoppel doctrine, and is also relevant to enforcing the terms of the confirmed plan, discussed below.

MEMORANDUM OF DECISION - 11

institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules 'impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims.*'" *Id.* (citations omitted).

Judicial estoppel is not limited to situations where debtors fail to disclose assets and later attempt to recover on the same. The doctrine also applies to unfair conduct, where debtors or other litigants take positions, and gain benefits, and then later take clearly inconsistent positions in an effort to obtain other benefits.[7]

In *Edwards Theatres Circuit, Inc.*, for example, the court estopped a creditor from claiming that a debtor's obligation to construct a theatre should be classified as "rent" because the creditor had previously asserted that the construction obligation was a separate, non-rental obligation. 281 B.R. 675, 682-83. Further, by initially asserting two separate claims (the construction obligation and a separate, rental obligation), the creditor was permitted to vote twice on the plan. *Id.* at 683. After the plan was confirmed, the court estopped the creditor from reclassifying the "construction" claim as a "rent" claim. *Id.*

---

[7] *See, e.g., United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 779 (9th Cir. 2009) (party judicially estopped from arguing that the "first publication" of an infringing work occurred in 2001 because that party had previously defeated a preliminary injunction motion by arguing that the first publication occurred in 1999); *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 605-06 (9th Cir. 1996) (plaintiff judicially estopped from asserting claims based on her ability to work where she had previously received a favorable Workers' Compensation settlement based on assertions that she was unable to work); *In re Edwards Theatres Circuit, Inc.*, 281 B.R. 675, 682-83 (Bankr. C.D. Cal. 2002) (discussed below).

MEMORANDUM OF DECISION - 12

Judicial estoppel is appropriate here as well. Debtors' sworn submissions declared the SunTrust creditors had secured interests in the Shingle Mill Road property, and their plan treated those interests as fully valid. Debtors gained all the benefits of a confirmed plan that provided an extended period within which they could effect a sale of some of their property to satisfy debts and ensured their control, instead of the Trustee's or the creditors' control, of that process. Debtors did not, throughout this case, assert any claims or causes against these creditors on the basis that the secured claims were defective or unenforceable. They cannot reverse course now.

### 2. Effect of plan confirmation

The confirmed plan in this case also bars Debtors from attacking the validity of the SunTrust creditors' interest in the Shingle Mill Road property. First, under the *res judicata* doctrine, the Debtors cannot re-litigate any issues that were decided (or could have been decided) at the hearing on confirmation. Second, and relatedly, the plan is a binding contract between the Debtors and their pre-confirmation creditors.

#### a. *Res judicata*

Section 1327(a) of the Code[8] provides that "The provisions of a confirmed

---

[8] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

MEMORANDUM OF DECISION - 13

plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." And consistent with § 1327(b), the second amended plan, Doc. No. 46, provided that on confirmation all property would vest in the Debtors, subject to the obligations acknowledged and provided for under the confirmed plan.

The courts of the Ninth Circuit have indicated strong support for the finality of confirmed plans, and enforce the *res judicata* or binding § 1327 effect of confirmation. *See, e.g., Brawders v. County of Ventura (In re Brawders)*, 503 F.3d 856, 866-867 (9th Cir. 2007); *see also In re deFrehn*, 03.3 I.B.C.R. 174, 175 (Bankr. D. Idaho 2003). This includes even insulating from later attack provisions of a confirmed plan that are arguably improper or "illegal" such as procedurally improper discharge of student loans, or preventing collateral attack on confirmation orders despite possible jurisdictional error. *Id.* at 867.[9]

Recall, § 1327 says that "the provisions of a confirmed plan *bind the debtor and each creditor*[.]" (emphasis added). It is true that the finality provision of

---

[9] The BAP in *Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 140 (9th Cir. BAP 2007), notes that the principles of *res judicata* under § 1327(a) should be viewed as "scalpels, not broadswords" and that much depends on what was litigated and the context. Sensitive to that caution, the Court has carefully reviewed the record and concludes that the treatment of the Defendants' secured claims, especially given the preconfirmation filing of proofs of such secured claims to which no objection was taken, and the express negotiations and treatment of those creditors' claims following Mr. Boyce's objection to confirmation, operates to preclude the sort of attacks now leveled at the legitimacy of those creditors' claims.

MEMORANDUM OF DECISION - 14

§ 1327 "is typically employed as a shield by a debtor to bar a creditor from taking action against a debtor in contravention of the terms of a confirmed plan, [but] a debtor is equally bound by the confirmation order." *In re Woltman*, 2008 WL 5157477, at *2 (Bankr. M.D. Pa. Nov. 18, 2008).

*Woltman* is apropos here. The debtors in *Woltman* provided for payment of a judgment lien in their confirmed plan. *Id.* at *1. Later, the debtors reversed course, and moved to avoid the lien to the extent it impaired their exemption in their residence. *Id.* at *1-2. The bankruptcy court denied the motion, explaining that "[c]onfirmation of a plan is 'res judicata as to all issues decided or which could have been decided at the hearing on confirmation.'" *Id.* at *2 (citation omitted).

The *res judicata* doctrine prevents Debtors from challenging the validity of the SunTrust creditors' interests in the Shingle Mill Road property.

### b. Contract

"Another way of looking at the binding effect of confirmation is that the plan is a contract between the debtor and the debtor's creditors." *See, e.g., Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. BAP 1997). And this Court has repeatedly recognized that agreements made in bankruptcy cases are of critical importance and are to be enforced. *See*, *e.g.*, *In re AICO Recreational Props., LLC*, 03.2 I.B.C.R. 105, 107, 2003 WL 1964190 (Bankr. D. Idaho 2003)

MEMORANDUM OF DECISION - 15

(negotiated settlements are particularly important "in bankruptcy litigation, where the preciousness of both time and money is accentuated").

In *AICO Recreational Properties*, this Court held a debtor bound to an agreement similar to the one at issue here. *Id.* at 107. The *AICO* debtor agreed to make adequate protection payments to a creditor and further agreed that if these payments were not made, the creditor was entitled to stay relief. *Id.* at 105. When the debtor defaulted on its obligations and stay relief was granted, the Court refused the debtor's subsequent attempts to disavow its prior agreement. *Id.* at 107 ("This Court has . . . been loath to tolerate a party's attacks on or disavowal of its prior settlement agreements.").

The same considerations that drove the *AICO Recreational Properties* decision apply here. If obedience to promises made and stipulations negotiated during cases is easily excused, much injury results, and the Court will not compromise the integrity of such agreements without compelling cause. *Id.; see also In re Bish's Boys*, 02.1 I.B.C.R. 6, 7, 2002 WL 33939626 (Bankr. D. Idaho 2002) (refusing to allow a Rule 60(b) attack on a negotiated agreement memorialized on the record, noting that, even though it may have been regretted or even made by the movant's lawyer without his client's consent, it was nevertheless entitled to be enforced, and neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)).

Here, the treatment of the SunTrust secured creditors' claims was subject to

MEMORANDUM OF DECISION - 16

express negotiations between Mr. Boyce on the one hand, and Debtors and their counsel on the other. Those discussions led to an agreement, embodied in a Second Amended Plan and in a Confirmation Order, two documents that each Debtor personally endorsed. This agreement is binding and will be enforced.

For all these reasons, the Court concludes that Debtors have failed to demonstrate some chance of succeeding on the merits of their claims.[10] Not only do Debtors' various arguments lack merit, their ability to advance them is barred and estopped under the foregoing principles and doctrines. Injunctive relief is unavailable to Debtors. *See Global Horizons*, 510 F.3d at 1057-58.

**CONCLUSION**

Upon the foregoing, the Court concludes that the motion of Defendants is well taken, and that the temporary restraining order shall be dissolved. Debtors

---

[10] Other hurdles exist. As noted, even assuming Debtors' legal attacks on the secured claims were potentially meritorious, Debtors obtained confirmation of a plan on a totally contradictory basis, one which treated the claims as legitimate. One way Debtors appear to avoid the finality and binding effect of confirmation is by seeking, in the chapter 13 case, entry of orders allowing them to "modify" the plan, and to "modify the case," and "striking" pleadings and "rescind[ing] all orders," and reinstating the § 362(a) stay that was lifted. The concept appears to be that, if so stricken (etc.), there are no plans or orders any longer forming the predicate to a bar under estoppel or finality principles.

But there has been no attempt by Debtors to comply with Fed. R. Civ. P. 60, incorporated in bankruptcy proceedings by Fed. R. Bankr. P. 9024, to obtain relief from prior orders. And even if theoretically available, there are serious constraints on obtaining relief under the Rule, which has been held appropriate only in limited situations. Similarly flawed is Debtors' request that the Court "reimpose" the stay. *AICO Recreational Properties* addressed this point, as well as the question of enforceability of parties' agreements. It held that there is no basis to "reimpose" or "reinstate" a stay previously terminated by order. 03.2 I.B.C.R. at 108 (citing, inter alia, *Jones v. Wood (In re Wood)*, 33 B.R. 320, 322-23 (Bankr. D. Idaho 1983); *Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 n.1 (9th Cir. 2002)).

MEMORANDUM OF DECISION - 17

request for preliminary injunction or other injunctive relief, will be denied. The Court will enter an order accordingly.

DATED: April 1, 2009

*/s/ Terry L. Myers*
TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

## CERTIFICATE OF SERVICE

     A "notice of entry" of this Decision has been served on Registered Participants as reflected by the Notice of Electronic Filing.  A copy of the Decision has also been provided to non-registered participants by first class mail addressed to:

David and Ingrid Allen
PO Box 550
Ponderay, Idaho 83852-0550


Case No. 09-07013-TLM

Dated: April 1, 2009

        /s/
Marci Smith
Law Clerk to Chief Judge Myers

MEMORANDUM OF DECISION - 19